Mr. Adams. Thank you, Your Honor. May it please the Court, my name is Eric Adams and I'm here today representing ATSER RESEARCH TECHNOLOGY, Inc., the appellant. The only issue in this case is whether the trial court abused its discretion by not following this court's decision that fees awarded for litigation misconduct must bear some relation to the misconduct. In this case, there were two instances of litigation misconduct that were found by the trial court. One had to do with inconsistent testimony regarding written licenses for the patent issue. And to date, to today, there's been no explanation as to how this inconsistent testimony resulted in additional fees being incurred by RKI, or Raba-Kistner. They did, however, submit to the trial court that $8,575.50 in additional fees was incurred, and that's for the license issue. The second instance of litigation misconduct that was found by the trial court had to do with some documents related to a project called I-15. Now, that misconduct specifically was that the vice president of the company did not look in his personal file or in a storage area for certain documents related to the I-15 project. What happened was RKI went to Utah, where the I-15 project took place, found some documents, and they incurred additional expenses in going to Utah and locating those documents. But those additional documents were deadly, weren't they? They were, Your Honor. They ended up being in a... And your company didn't know that it had a prior proposal and had produced that prior invention years before you applied for it at the Utah Transportation Program? You didn't know this? Your company didn't know this? The company... You may not have known it, but surely your company knew what their business was. Well, in this particular instance, Your Honor, the materials that were in those I-15 documents that were, as you said, were deadly because they resulted in a summary judgment against Atzer... There's no question about the public use issue. I mean, that's not an issue on the appeal. Well, that's not an issue on this appeal, but the reality is that it was a couple of statements within those documents that were deadly to the patent, but those were never actually used on that project. They were a disclosure... We're not going to go into the merits of that. That's right. That's a done deal. That's right, Your Honor. What happened was... But how could your company not have known of its prior business activity? The company did not realize that that was an issue in this case. They did not take the position that that was within the scope of what was claimed in the patent. It was a different project. It was never used. It was a part of a contract modification that never took place, and so that was their explanation for not understanding that... For the I-15 materials and... Did your company produce them timely? Yes, Your Honor. You did? Well... Records suggest otherwise. They produced I-15 documents. The problem here was the Vice President did not produce what was in his personal file or in a storage area because he did not know that anything in his personal file was going to be different from what was produced in the main file in this case. He had a personal file in his office as he testified... On the I-15 project. Yes, Your Honor. It can be a mistake, but the truth is that there was a relationship between the misconduct and the penalty here, wasn't there? The district court was very clear that the time period extends back to when you should have produced the document up until the point of summary judgment. That's a linkage, isn't it? Well, the problem with that is it's based on speculation because the summary judgment that was actually filed on July 31, 2009 that relied on those I-15 documents could not have been filed in 2007 when the trial court said it could have been. The motion for summary judgment in this case heavily relied on the Markman determinations by the trial court, and those determinations were not made until April 27, 2009. But the misconduct began earlier. They could have moved for summary judgment earlier. The case could have been over much earlier if you had produced the documents earlier. That would only be... All of these are facts in the record, which we really can't quibble with, can we, too much? I think it can be argued that they could not have filed that summary judgment any earlier. I could just as easily say that if these materials had been produced in 2007, that they would have waited for a Markman determination. They would have waited and conducted discovery and then filed their summary judgment. And that is actually more consistent with the facts in this case than suggesting that if Patser had produced these documents earlier, then the trial court would have immediately – well, first of all, that they would have immediately filed a summary judgment. But that's all speculation. It's all speculation, but if you look at the facts, what I'm saying... probably to your website, which is where you reveal the fact that you had that I-15 contract, among other things. And then they had to go explore what your prior activities were in order to discover that there had been a public use of this so-called invention, right? Well, actually, Your Honor, the I-15 project was disclosed as a project that Patser had worked on before. The issue was simply the materials that were produced from the I-15 project did not include these two documents that were relied on in the summary judgment. They went to Utah and found those. They incurred additional expenses of $17,149. And had they had them earlier, isn't Chief Judge Rader correct that this case could have been terminated a lot quicker? Isn't that true? That would not be true. It would be inconsistent with the actual facts. They found these documents in April 2009. They did not move immediately for summary judgment. The district court says that that's the case. That's specifically his findings. So where are we empowered to question that? Well, it was an abuse of discretion. It has no – the $800,000 award is based on speculation. There's no link between – But your response is speculation, as Judge Plager points out. We do have to speculate of what would have happened if there hadn't been litigation misconduct. But because the misconduct was yours, isn't the district judge within his discretion to place the full burden of that on you? I don't think that it's appropriate to speculate as to what may have happened in the past with the benefit of hindsight, especially when that speculation is inconsistent with what actually happened. Once they found the documents, they didn't move for summary judgment right away. They waited until the Markman determination. They conducted additional discovery at a scheduling conference before the trial court. After they'd had the documents for months, they told the court they still needed more discovery and more time to file their dispositive motions. So everything that's in this case as far as the facts indicates that they would not have been in any better position to file their summary judgment any earlier, even if the documents had been produced earlier. Was the district court correct in the conclusion that had the documents been produced when the discovery request went out, that there would have been no case that would have ended it? No. The summary judgment that was filed had to have the Markman determinations. But why do you need claim interpretation, claim construction, when the issue is on sale? Well, the issue – one particular term I'll point to as an example, wide area network. That was a disputed term. It was a term that was argued in their summary judgment. It was debated in the briefing to the court on the summary judgment. And even the trial court, when he did his summary judgment order, discussed over two pages the impact of the definition of wide area network to the invalidity analysis. To argue in retrospect with the benefit of hindsight that, well, we wouldn't have argued about wide area network, which was a disputed term in the Markman determination, isn't consistent. I mean, you cannot take the – it is incorrect to take what was filed as a summary judgment on July 31, 2009, and say it could have been filed in 2007. It was too heavily relying on the Markman determination. The trial court specifically discussed the Markman determinations and their impact on invalidity. And by their own words, they had to conduct additional discovery before they were in a position to file their dispositive motions. If they had wanted to file their summary judgment with these documents, and as they said, file it immediately, they could have done it in mid-April 2009 when they found them. But, in fact, they waited for the summary judgment – I mean, the Markman determination. They told the court they weren't in a position yet to file their summary judgment, that they needed more discovery. And, in fact, from the point in time when they claimed they found these documents in April 2009 to the end of the discovery period, they chose to take 12 depositions. These are depositions they noticed and took. These are the facts, and this is what really happened. And now they're trying to go back after they won and say, well, you know, if this had been produced in 2007, we would have just as easily filed for our summary judgment. They're not saying that. The trial judge is saying that. The trial judge has agreed with their arguments, and he has found that. And he found that as a fact. And we contend that that is an abuse of discretion. Because there is no discretion to award fees that are not related to the misconduct. And in this particular case, they've argued roughly $8,500 was related to the licensing misconduct. They spent $17,149 going to Utah to find these documents. But other than that, there is no linkage, and everything else is just based on speculation. Now, the trial judge awarded $800,000, and you're saying he should have awarded something less than $25,000. Roughly $25,000. Roughly $25,000. Yes, Your Honor. That's a big gap. There is a huge gap. And I think one particular case is a good example that provides some – I see I'm in my rebuttal time. Yes. If there's no further questions right now, I'll reserve my remaining time for rebuttal. Okay. Let's reserve it, Mr. Adams. And let's hear from Mr. Moran. Good morning, Your Honors. On behalf of the appellees, I submit that the appellee's brief lays out the appellee's position clearly and succinctly, that there has been no abuse of discretion in this case. District Court clearly laid out the proper legal standard, made findings of fact, and the appellant has not argued that the district court made a manifest error of judgment in assessing the amount of fees. Accordingly, it's our position as laid out in the brief that the standard to demonstrate an abuse of discretion has not been met and respectfully request that the court affirm the district court's judgment. What is our standard of review? You seem to be using two different standards. Standard of abuse of discretion, Your Honor. You agree with him on that one? Yes, Your Honor. Okay. And we ask you therefore that you affirm the district court's judgment, and I'll be glad to answer any questions that you have on the briefs. Well, I suppose the only question is why, in fact, at what stage, when you differ from the American rule of the parties bearing their own attorney's fees, and here agreeing that there was some sort of, whether it was misconduct or error or mistake or whatever it was, to say this case shouldn't have been brought at all, wouldn't have been brought at all, therefore pay the entire amount doesn't seem to put this rule to give one reason to think. Maybe, in fact, the better rule is the one that we have here, but how does that square with the traditional American rule? Well, I think the traditional American rule is the norm. This case is an exception to that rule, and in addition to other reasons for having exceptions, one of them is the misconduct, and as the district court judge laid out, the number of facts supporting his position and that this court held in the previous appeal, the misconduct is a record. It's not the law of the case. So in a special circumstance such as inequal conduct or a Walker-Proxas type of case, I agree that the American rule is appropriate, but the American courts, this court, has set out certain exceptions for certain conduct that it thinks the American rule should not apply to, and as we laid out in our brief and as the district court laid out in its opinion, this is a perfect case for an exception that applies to a particular kind of misconduct. I'm curious as to how your client uncovered the I-15 contract existed in its terms. How did that happen? Well, as the district court pointed out, it was through extreme diligence and a bit of luck. That was his conclusion. Yes. What are the facts? Do you know the facts? Yes. Yes, Your Honor. I mean, we had been looking for them and asking for them for about a year and a half or more, and through contacts in the industry understood that the Utah Department of Transportation had an archive and located that archive, and just by happenstance, they happened to have the documents for this contract still in their archive. So we went out and looked for them, and the particular documents that we found that were deadly just happened to be in their archive. So it was just detective work, basically. Okay. Your Honors. Thank you, Mr. Moran. Thank you. Mr. Adams. Thank you, Your Honor. One case that I think is particularly helpful for this situation is the Hoax case, which was decided by this court in 1995. In that particular case, this court found that there was litigation misconduct because a sham expert affidavit had been submitted to the trial court. And what was related to that as far as a fee award, which was determined by this court, is the cost of going and taking that expert's deposition, the cost related to moving to strike that expert. Those were costs that were directly associated with the sham affidavit by the expert. This court decided that the case needed to be reversed, sent back down to the trial court, so that the trial court could determine what were the fees and costs related to the deposition and moving to strike that expert. If we follow that same logic in this case and look at what were the additional fees incurred because of the licensing testimony that the trial court found was inconsistent. They've submitted roughly $8,500. What was the additional expense for not producing I-15 documents that were eventually deadly to the case? $17,149 was the additional expense for them going to Utah. The trial judge said plaintiff's misconduct directly caused defendants to incur hundreds of thousands of dollars in ultimately unnecessary fees. That's a fact finding. That's what he said, Your Honor, but that was an incorrect finding. There is no discretion for the trial court to link up fee awards when it's not related to the specific misconduct found in that case. I have a question. One more question for you, Mr. Adams, which is that you asked for your prayer for relief that we remand the case so that a determination of the fees and costs related to the Utah trip can be made. Obviously, there's a dispute as to what those fees and costs are. In fairness, if we should remand, shouldn't we also ask the trial court to reconsider whether the award should have been the $1,000,002 that they asked for rather than just the $800,000 that he granted? Wouldn't that be part of the remand? Part of the remand, Your Honor, if we follow, for example, the hoax case that I just cited, would be to instruct the trial court that in making its evaluation of what the appropriate fees and costs were, to look at specifically the trip to Utah and any of the fees incurred because of the license testimony and just those two things. The fact is by the third time they tried to ask for money, I mean it went from $1.1 million roughly to $800,000. They tried to bump it up again to $1.2 million. The trial court was already getting doubtful as to their good faith in their request for attorney's fees. So I think the court's instructions to the trial court in this case would be look at the inconsistent testimony, see what the additional fees were related to that. Look at the trip to Utah. How much did that cost? Was it $17,149? Limited to their out-of-pocket costs. Yes, Your Honor. Okay. That's all the questions. Thank you, Mr. Adams. Thank you. Our last case today is Deere v. Bush Farm.